The **UNITED STATES**

v.

**Clarence J. QUINN, Jr.**

**Crim. No. 28206.**

United States District Court,
N. D. Georgia,
Atlanta Division.

Sept. 20, 1973.

---

John W. Stokes, Jr., U. S. Atty., Wm. P. Gaffney, Asst. U. S. Atty., Atlanta, for plaintiff.

John Myer, Atlanta, for defendant.

### ORDER

EDENFIELD, District Judge.

Clarence J. Quinn, Jr. has been charged in a two-count indictment with violation of 18 U.S.C. § 1951 (Hobbs Act).[1] The indictment alleges that Quinn attempted and did in fact "unlawfully, knowingly and wilfully obstruct, delay and affect . . . interstate commerce and the movement of articles in commerce by extortion through the wrongful use of fear . . ." by obtaining from two store owners, Kiesling and Daumit, checks in the amount of $300 and $500 payable to the Greater Edgewood Baptist Church and subject to Quinn's personal use, by threatening to picket their respective stores, American Discount Stores and Shaw Clothes in Atlanta, Georgia. The case is presently before the court for decision on a number of pre-trial motions submitted by defendant.

### I. Challenge to Grand and Petit Jury Selection Plan

Defendant moves to quash and dismiss the indictment, and challenges the existing pool of petit jurors on the grounds that "the method of organizing and selecting grand and petit jurors in this court violates the provisions of 28 United States Code, § 1861, et seq., . . . and the provisions of the Fifth and Sixth Amendments, United States Constitution. . . ." In support of his motion, defendant asserts that prospective jurors are selected exclusively from the voting lists of the counties within the court's territorial jurisdiction and that these lists, and the resultant grand and petit juries selected therefrom, under-represent the number of black persons and persons between the ages of 18 and 30, who actually reside within the court's territorial division. Defendant has submitted a table purporting to show under-representation of blacks on the master jury lists in each of the four divisions of the Northern District of Georgia, ranging from 7.6% to 40.6%. No explanation of how these figures are to be interpreted is included in defendant's brief.[2] The court presumes that the percentage figures are alleged to show the percentage variance between the number of blacks actually residing in the various divisions with the number of blacks placed on the master jury wheel. Assuming this to be what the percentage figures represent, there is nothing in defendant's brief to indicate the source of the population statistics used, or what those statistics reveal. The percentage of blacks on the jury wheel according to each division was presumably obtained from the random sample conducted by the Clerk of Court, attached to defendant's brief as exhibits A1 through A4.

---

1. Section 1951, Title 18, U.S.C., "Interference with commerce by threats or violence," provides in relevant part: "(a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years or both."

2. Defendant also lists figures purporting to show the under-representation of blacks sitting on juries actually empaneled. These figures are offered without any explanation as to their source, and in consequence the court finds them to be wholly conclusory and without probative value. As the court knows of no record tabulating the number of blacks actually serving on juries, it will confine its factual refutation of defendant's allegations to the alleged under-representation of blacks on the master jury wheel, relying for its statistical data on the random sample made by the Clerk of Court. See infra.

In response to defendant's allegations, the government has submitted its own analysis, comparing the percentage of blacks in the total population of the Northern District, with the percentage of blacks in the random sample of the master jury wheel. For its statistical information on the general population the government has relied on 12 Bureau of the Census, *General Characteristics of the Population*, Table 35 (Washington 1971), which reports the 1970 census figures by county, giving a breakdown between the black and white populations. When the ideal black-white percentage figures for the population of the Northern District are compared with the percentage figures found in the Clerk's sample of the master jury wheel, the government contends that the number of blacks represented on the jury wheel are only 4% less than their ideal percentage in the total population. The court has independently examined the government's source materials and calculations, and finds that the government's conclusion is correct.

■ The average variance of 4% between black representation in the population and on the jury wheel does not support defendant's allegation that the jury selection system currently in use is constitutionally defective and in violation of the Jury Selection Act, 28 U.S.C. §§ 1861 et seq. As the government points out in its well-organized brief, perfectly proportional representation is not required since no source list will be an exact statistical abstract of the community, United States v. DiTommasso, 405 F.2d 385, 389 (4th Cir. 1968), cert. denied 394 U.S. 934, 89 S.Ct. 1209, 22 L.Ed.2d 465 (1969), and that in the absence of "spectacular under-representation" of blacks on juries there must be a showing of systematic, purposeful exclusion of blacks from the jury lists. United States v. Hyde, 448 F.2d 815, 824–826 (5th Cir. 1971), cert. denied 404 U.S. 1058, 92 S.Ct. 736, 30 L.Ed.2d 745 (1971). Defendant has made no showing of purposeful discrimination, and the court finds that a variation of four percent does not qualify for the adjective "spectacular". *See* Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L. Ed.2d 759 (1965). With respect to blacks, therefore, the jury selection plan for the Northern District, approved by the Judicial Council of this circuit, satisfies the mandate of 28 U.S.C. § 1861 and satisfies the constitutional imperative set forth in Thiel v. Southern Pacific Co., 328 U.S. 217, 66 S.Ct. 984, 90 L. Ed. 1181 (1946).

■ Defendant's attack on the jury selection plan based on alleged under-representation of persons between ages 18 and 30 is without merit. It is not alleged that the Clerk has failed to refill the master jury wheel with voters 18 years of age and older, as required, and persons falling between ages 18 and 30 are not a cognizable group requiring special representation. As correctly stated in the government's response, "There is no community of interest especial to that age that cannot be adequately represented by the populace as a whole. United States v. Guzman, 337 F.Supp. 140 (S.D.N.Y. 1972), aff'd. 468 F.2d 1245 (2d Cir. 1972)."

For the foregoing reasons, defendant's motion to quash and dismiss the indictment based on his challenge to the jury selection plan is denied.

## II. *Motion to Dismiss the Indictment for Insufficiency*

Defendant moves the court to dismiss the indictment, asserting, "(a) it is insufficient as a matter of law to apprise him of the charges against him and (b) it fails to allege an indictable offense in that it fails to allege in particular how defendant interfered with interstate commerce, an indispensable element of the offense." Specifically, defendant complains that the indictment does not distinguish between obstruction and attempted obstruction of interstate commerce, that it does not charge the specific manner in which the defendant is alleged to have interfered with interstate commerce, that it does not distin-

guish between items in interstate commerce and the movement of articles in commerce, and that it does not identify any such articles in commerce.

The indictment is drafted substantially in the language of 18 U.S.C. § 1951, and both counts are identical, with the exception of the named individual store owners from whom money was allegedly extorted and the amount of the money allegedly extorted. Count One of the indictment is set forth in the margin.[3]

■ With respect to defendant's first complaint, that the indictment does not distinguish between obstruction and attempted obstruction, the government responds that, in fact, the indictment charges defendant with *both* crimes. It should be noted, parenthetically, that there is nothing duplicitous in the government charging an attempt along with the substantive crime. In so doing the government is merely making explicit its right to a verdict, should the evidence warrant, finding defendant guilty of an attempt to commit the offense charged, whether an attempt is charged in the indictment or not. Rule 31(c), Fed.R. Crim.P.; *see, e.g.,* Mihailoviki v. California, 364 F.2d 808 (9th Cir. 1966).

■■ From the decided cases it is clear that the instant indictment is sufficient and alleges an indictable offense. Defendant's reliance on Stirone v. United States, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), is apposite only to the extent that it confirms with respect to Hobbs Act violations the established principle "that a court cannot permit a defendant to be tried on charges that are not made in the indictment against

him." 361 U.S. at 217, 80 S.Ct. at 273. In *Stirone* the indictment charged defendant specifically with obstructing the movement of supplies and materials, *viz.,* sand, moved in interstate commerce for the manufacture or mixing of ready-mixed concrete. Defendant was convicted, however, on the basis that he interfered with the possible future shipments of *steel* in interstate commerce, a specific element of the offense not charged in the indictment, and against which defendant had no obligation to defend at trial. In *Stirone,* as the government points out, the Court noted that the Hobbs Act speaks in broad language and outlaws interference with interstate commerce "in any way or degree." The Court made clear that its reversal of the decision below was premised on the fact that "when only one particular kind of commerce is charged to have been burdened a conviction must rest on that charge and not another, *even though it be assumed that under an indictment drawn in general terms a conviction might rest upon a showing that commerce of one kind or another had been burdened."* 361 U.S. at 218, 80 S.Ct. at 274 (emphasis supplied). In the instant case, the government has chosen to rely on a more general allegation that stores doing business in interstate commerce were burdened by the use or threatened use of pickets and by the extortion of money from their owners. While the indictment itself does not allege the specific items of commerce interfered with, or the exact nature of the interference, it is clear that such specificity is unnecessary to fairly allege a violation of the Hobbs Act. The present indictment al-

3. "COUNT ONE. That, on or about December 16, 1972, at Atlanta, Georgia, in the Northern District of Georgia, CLARENCE J. QUINN, JR., did unlawfully, knowingly and wilfully obstruct, delay and affect, and attempt to obstruct, delay, and affect interstate commerce and the movement of articles in commerce by extortion through the wrongful use of fear in violation of 18 U.S.C. § 1951, to wit, by obtaining from Federico Kiesling, District Supervisor, American Discount Stores, Inc., New York, New York, which corporation operates the American Discount Store, 40 Whitehall Street, S.W., Atlanta, Georgia and other retail stores in various states, all of which receive and sell goods shipped in interstate commerce, a check in the amount of three hundred ($300.00) dollars payable to the Greater Edgewood Baptist Church, and subject to Quinn's personal use, which was obtained with the consent of Federico Kiesling by the wrongful use of fear of economic loss namely by the use of pickets at American Discount Store in Atlanta, Georgia."

leges substantially the language of the statute, and under the decided cases that is sufficient. Esperti v. United States, 406 F.2d 148 (5th Cir. 1969); United States v. Addonizio, 451 F.2d 49, 58 (3d Cir. 1972); Carbo v. United States, 314 F.2d 718 (9th Cir. 1963).

### III. Motion for Bill of Particulars

The bulk of defendant's motion for particulars requests the government to disclose in detail the manner in which defendant's actions obstructed, delayed or affected interstate commerce. Defendant asks, with respect to each store mentioned in the indictment, for a statement of the items and the specific movement of articles in interstate commerce which were obstructed, delayed or affected. These requests will be denied.

As stated in this circuit, the purpose of a bill of particulars is to "inform the defendant of the nature of the charge against him with sufficient precision to enable him to prepare his defense, and to avoid or minimize the danger of surprise at trial." United States v. Bearden, 423 F.2d 805 (5th Cir. 1970). This court is well aware of the liberalizing effect of the 1966 amendment to Rule 7(f), Fed.R.Crim.P., on the kinds of material available pursuant to a request for particulars, and is in full accord with the statement of Justice (then Judge) Whittaker in United States v. Smith, 16 F.R.D. 372, 374 (W.D.Mo.1954), that "the fact that an indictment or information conforms to the simple form suggested in the rules is no answer or defense to a motion for a bill of particulars under Rule 7(f)," and that because the defendant is presumed innocent, "it must be assumed 'that he is ignorant of the facts on which the pleader founds his charges' . . ." In the present case, however, defendant requests information beyond that needed to prepare an adequate defense, in that it goes beyond what the government is required to prove in order to obtain a conviction.

In United States v. Pranno, 385 F.2d 387 (7th Cir. 1967), the defendants were convicted under the Hobbs Act for threatening the owner and contractor of a proposed manufacturing plant at Northlake, Illinois, that the necessary building permit would not be issued until $20,000 was paid. The element of interstate commerce "delayed, obstructed or affected" involved the delay of building materials for the project being shipped to Illinois and delay of products shipped from the plant to points outside of Illinois after the plant had been built. The defendants argued on appeal that this was "not as immediate or direct an effect upon interstate commerce as Congress intended to proscribe." At 389. Said the court, "The Supreme Court has made it clear that the statute is to be construed broadly and is not limited to conduct which directly and immediately obstructs a particular movement of goods in interstate commerce. Extortion by threat to disrupt a local activity the stoppage of which would in turn result in stoppage of interstate shipment of raw materials essential for that activity falls within the act. The statute seems to be read as not only prohibiting the obstruction of commerce by extortion, but also prohibiting extortion by any threat the carrying out of which would obstruct commerce. . . . All that must be proved . . . is that defendant conspired to commit extortion, and that the natural effect of carrying out their threat, whether they were conscious of it or not would affect commerce." At 389–390 (citations omitted). From Pranno it is clear that the government is not required to prove conduct which "directly and immediately obstructs a particular movement of goods in interstate commerce." Specificity as to which items traveling in interstate commerce were interrupted or affected, or the manner in which they were so affected, is not required. It is required only that the conduct of the defendant, taken as a whole, "in any degree reasonably could be regarded as affecting commerce." Hulahan v. United States, 214 F.2d 441,

445–446 (8th Cir. 1954). *See also* United States v. Addonizio, *supra*; Esperti v. United States, *supra*; United States v. Varlack, 225 F.2d 665 (2d Cir. 1955).

██ In the present case the indictment alleges that the two stores in question receive and sell goods in interstate commerce. The government has stated that the extortion of money would reduce the victims' capacity to do business in interstate commerce, and the use or threatened use of pickets would obviously interrupt the operations of a business dealing in goods shipped in interstate commerce. The indictment sufficiently apprises defendant of the nature of the effect his actions allegedly had on interstate commerce, to the extent required in proving the offense charged, and defendant's motion for the requested particulars is therefore denied.

Defendant's requests contained in paragraphs 13 and 16 regarding Count One, and his requests contained in paragraphs 13, 16 and 17 regarding Count Two call for information properly the subject of a motion for discovery.[4] Substantially the same information is requested in defendant's motion for discovery, which will be considered *infra*. As presented in the motion for bill of particulars, therefore, these requests are denied.

The indictment adequately sets forth the factual basis underlying the allegation that payments were obtained from the alleged victim through the wrongful use of fear, *viz.*, the use of pickets, and defendant's request contained in his paragraph 15 under both counts is denied.

██ Defendant's request number 14 asking with respect to both counts for "the time, place and manner in which any payment was made to the defendant," is reasonably necessary to assist the defendant in preparing an adequate defense, and is granted.

## IV. *Motion for Disclosure of Electronic Surveillance and for Hearing*

██ Defendant has moved that the government disclose any logs, records and memoranda of "any electronic surveillance directed at him or directed at any conversation to which he was a party, and the name and address of any person who conducted any surveillance which was not the subject of any log, record or memorandum." The government has responded that defendant has been furnished transcripts of all conversations to which he was a party that are in the possession of the government, and that defendant has been furnished copies of his telephone conversations with Paul Daumit and Edward Daumit, which calls were taped by the Daumits without the knowledge or participation of the government.

The court assumes that the government's response is addressed to all the material requested in defendant's motion, and that in framing its response the government has considered defendant's request for the name and business address of any person who conducted electronic surveillance, the content of which was not incorporated into a transcript, log or memorandum, whether that surveillance was known at the time the request was made or has since become known. Given this assumption, the government has complied completely with defendant's requests and defendant's motion for discovery and an evidentiary hearing is therefore denied as moot.

4. The requests call for the names and addresses of all persons who were present or have knowledge of any actions of defendant which obstructed interstate commerce, the names and addresses of all persons known by the government to have knowledge of the facts of the case, and the names of the FBI agents who participated in the receiving of transmissions of any conversations between Daumit and the defendant. The government has complied with the latter request, revealing the names of the FBI agents in question. The other requests are taken up *infra*.

## V. Motion for Discovery and Inspection and Motion to Compel Disclosure of All Exculpatory Information

With the exception of certain items to which defendant claims he is entitled under Rule 16(b), Fed.R.Crim.P., most of defendant's requests proceed under authority of this circuit's application of the decision in Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), to criminal pre-trial discovery. In Williams v. Dutton, 400 F.2d 797 (5th Cir. 1968) (hereinafter *"Dutton"*), the court held, "It is now clear that Brady imposes an affirmative duty on the prosecution to produce at the appropriate time requested evidence which is materially favorable to the accused either as direct or impeaching evidence." 400 F.2d at 800.

Defendant's motions and the government's response are governed by the procedure outlined by this court in United States v. Eley, 335 F.Supp. 353 (N.D.Ga.1972) (*"Eley"*), and as applied and explained in United States v. Houston, 339 F.Supp. 762 (N.D.Ga.1972) (*"Houston"*).[5] As an initial matter, the court notes that the parties have complied with the procedure outlined in *Eley*. The defendant has made an informal request to the government for the information sought, and the government has replied, stating which information it possesses and where appropriate the reasons for its nondisclosure. As is discussed in detail below, while the court finds the *Eley* procedure to have worked well in treating requests for information under *Brady*, the broad language employed in *Eley*, requiring disclosure of "information which might be helpful to the accused's case", has created a misapprehension among many defendants before this court as to what information they are constitutionally entitled under *Brady*. Consequently, in deciding the present defendant's discovery requests, the court has taken the opportunity to amend the language of *Eley* and clarify the government's obligations thereunder. The court has chosen this occasion for its discussion of the needed amendment to the *Eley* procedure, despite the length of the order engendered, both because the nature of defendant's requests illustrates the problem created by the present *Eley* language and because the court finds the briefs of both parties on the issues presented to be of a calibre above those which are usually filed in pre-trial criminal proceedings.

### A. Oral statements made by persons in connection with the case.

■ Defendant requests the memoranda, summaries, and recordings of oral statements made by any persons in connection with the subject matter of this case. To this request the government has responded that all such statements have been made by prospective government witnesses, and that under the Jencks Act, 18 U.S.C. § 3500, they

---

5. The appendix to *Eley*, adopted by the judges of the Atlanta Division, sets forth a procedure which reads:

"In light of the decision of this court in United States v. Eley, 335 F.Supp. 353 (N.D.Ga.1972), the following procedure shall be adhered to in the Atlanta Division of this Court:

(1) The United States Attorney, upon request of an accused, shall permit the accused to inspect and copy any information in the possession of the prosecution which might be considered helpful to the accused's case.

(2) If the United States Attorney entertains a genuine doubt as to whether he must disclose certain information or questions the necessity of granting an accused pretrial discovery of certain information which must be disclosed, he may withhold such information from the accused. If he chooses to withhold such information, he shall notify the accused of the reason for this action and generally describe the information in question.

(3) If the accused, upon receipt of such notice from the United States Attorney, nevertheless desires discovery of such information, he shall so move in this court within ten days after arraignment or waiver thereof. The court may extend the time within which such motion shall be made in exceptional circumstances. Should the accused so move, the court will order the prosecution to submit the information in question for in camera inspection and proceed to dispose of the controversy on its merits."

need not be disclosed until trial. The government has further replied that such statements contain no exculpatory information, and that should any be uncovered the same would be immediately transmitted to defendant's counsel. As this court has stated previously, the Jencks Act disclosure timetable cannot control the release of information to which defendant is constitutionally entitled. *Eley, supra,* 335 F.Supp. at 358. Where, as here, however, the government has denied that the statements it possesses contain information, or are themselves favorable to the defense, defendant has no right to disclosure in advance of trial. The court finds that the government's response conforms to the spirit of the procedure outlined' in *Eley-Houston.* Of importance to future discovery motions, moreover, the court also finds that the wording of the government's response better serves the purpose of the *Eley* procedure than does the phraseology adopted by the court in *Eley* and *Houston.* In the future, the court will require the prosecution to initially determine whether any information in its possession is *"arguably favorable, either as direct or impeaching evidence"* to the defense, rather than whether such information "may be *helpful* to the defense", as is now presently required. To understand the significance of this minor surgery on *Eley-Houston,* and the change it works in the *Eley* procedure, some review of the policy behind *Eley* is necessary.

In an effort to strike some middle ground between total reliance on the prosecution's averment that it holds no information favorable to the accused, and what would become the perpetual duty of the court in every case to search the government's file in camera for favorable information, the court in *Eley* adopted a threshold standard of "helpfulness." As stated in *Houston:*

"[The court] decided to rely on the good faith of the prosecution and to allow it to make the initial determination as to whether information in its possession had to be disclosed to an accused before trial. However, in order to better protect the interests of the accused, the court expanded the scope of inquiry which the prosecution was to make at this initial stage and ordered it, upon timely request by an accused, to disclose before trial any information in the government's possession which might be *helpful* to the accused's case.

"The court expected that the *Eley* procedure would facilitate the handling of *Brady* requests with a minimum of judicial involvement. Thus it envisioned that if an accused requested from the prosecution certain information which either the Government did not possess at all or could not be helpful to the accused's case, the prosecution would respond that (a) the Government did not possess the information sought or (b) the Government did possess the information sought but the information could not be helpful to the accused's case. If the prosecution made either of these responses the matter would end. No motion by the accused in this court for discovery of the requested information would be appropriate because the court would rely entirely on the good faith response of the prosecution. Similarly, if the Government did possess the requested information and the prosecution determined that it might be helpful to the accused's case, the prosecution would disclose it to the accused before trial, and, again, no motion would be necessary.

"The court recognized, however, that there might be instances when the prosecution entertained a genuine doubt as to whether it had to make the *Brady* disclosure or when it believed the information was discoverable under *Brady* but that disclosure should be postponed until trial. In such circumstance the court stated in *Eley* that the prosecution could deny the accused's request. The court envisioned that if it chose to deny the request the prosecution would respond that (a) the Government did possess

the requested information but the prosecution believed that it had legal cause to deny the request or that (b) the Government did possess the requested information and the prosecution believed the information was discoverable under *Brady* but it had legal cause to postpone the disclosure until the time of trial. The prosecution would further inform the accused that he could challenge either response by motion in this court. The accused would then have the option of so moving . . . and the court, if necessary, could order an in camera inspection of the information in question to resolve the controversy." *Houston, supra,* 339 F.Supp. at 764–765.

■ To date, this procedure has worked well. Some uncertainty has been created, however, by the court's requirement that the government disclose information "helpful to the accused's case." Does this mean that the defendant is constitutionally entitled to any information which would be "relevant" to counsel's preparation of the case, and in that sense "helpful" to the defense? Is the government constitutionally required, for example, to disclose the names and addresses of persons with knowledge of the facts of the case, whether or not the testimony of such witnesses will support the accused's defense? *See* United States v. Gonzalez, 466 F.2d 1286 (5th Cir. 1972) (hereinafter *"Gonzalez"*), and discussion *infra.* While such information might be generally "helpful", in the same way that copies of all documents in the government's file pertaining to the case might be helpful, the court finds that the decision in *Brady* was not meant to bring the parameters of criminal and civil discovery into congruence, as desirable as such a reform might be.

■ Stated simply, the test of whether disclosure is required is not whether information "might be considered helpful," but whether the information "is materially favorable" to the defendant's case. When used as a threshold test, "helpfulness" serves the salutary purpose of requiring the government to bring to the attention of the defendant the existence of material which the court may ultimately determine to be "materially favorable" and hence discoverable. In other words, in those circumstances in which the government possesses "helpful" information but does not believe that it is discoverable under *Brady* because it is not "materially favorable", or for some other reason, the defendant can move the court to inspect the material in camera. It is then the court, not the prosecution, who decides whether the material is to be disclosed.

■ Unfortunately, in neither *Eley* nor *Houston* was it made clear that "helpfulness" was a threshold inquiry only, and not the final standard to be applied in determining whether the defendant has a right to the information requested. From the language in *Brady,* from the Fifth Circuit's interpretation of *Brady* in *Dutton,* and from the court's recent decision in *Gonzalez,* it is clear that the defendant is entitled to discovery of information which is "materially favorable either as direct or impeaching evidence." To avoid any confusion over the correct standard for disclosure, the court deems it advisable to discard its reference to "helpful" and to make more explicit the contemplated workings of the *Eley* procedure in this area.

■ When confronted with an informal request for *Brady* discovery, the government will respond (a) whether it possesses the information requested and (b) whether such information, construed broadly, is "arguably favorable" to defendant's case. If the government does not possess the information, or avers that it is not "arguably favorable", then the matter will end. Similarly, to paraphrase *Houston,* if the government possesses the information and finds that it is "materially favorable", the government will disclose it to the defendant, and no further action will be necessary. If, however, the government possesses the information but entertains a genuine

doubt over whether it is materially favorable or not, the government may deny the request but shall advise the defendant of the reason for its denial, asserting its doubt that the information is favorable or material. Accompanying such a response shall be a general description of the information in question. Upon receiving this response the defendant may then move the court to examine in camera the "arguably favorable" information. The court will determine whether the information is "materially favorable", and if so, whether, considering any objections which may be raised by the government, the information must be disclosed at the time requested.

Without departing from the established *Brady* test, this procedure should protect the defendant from having to depend on the "benevolence of the prosecutor", *Dutton*, 400 F.2d at 800, in those instances where there is a legitimate question over whether certain material is or is not "favorable." Additionally, it will remove from the government what is at times its very uncomfortable burden of deciding a close question correctly on pain of having its case later dismissed should its decision prove erroneous. And finally, the procedure should spare the court having to examine the prosecution's file in every case where a motion for "materially favorable" evidence is made, which is to say, in virtually every case. It should be emphasized that the present discussion works no major change in the policy or procedure in *Eley*. Today the court merely clarifies the standard to be used in deciding whether a defendant is entitled to discovery of information under the aegis of *Brady*. Whereas the court in *Eley* required the prosecution to permit the accused to "inspect and copy any

information in [its] possession which might be considered helpful to the accused's case," the court in the present case requires disclosure of information "arguably favorable to the accused's case." Similar to the procedure in *Eley*, *see* Appendix ¶ (2) at 359–360 of 335 F.Supp., the government may elect not to disclose "arguably material" information, but if so, the defendant must be advised and afforded the opportunity to timely move for the court's in camera inspection of the information withheld. In all other respects the procedure to be followed remains the same.[6] It must be emphasized that the government's constitutional obligation is only to disclose information which is materially favorable to the defense. But in this court, the government may not refuse disclosure of "arguably favorable" information without first affording defendant an opportunity to have the information viewed by the court, in camera, for final determination.

In the present case, the government has responded that it possesses no statements of witnesses "arguably favorable" to the defendant, and defendant's motion is therefore denied.

B. Names and addresses of persons with knowledge pertaining to the facts of the case.

Defendant requests the "Names and addresses of all persons who have knowledge pertaining to the facts of this case, known to the Government, or who have been interviewed by the Federal Bureau of Investigation or other investigatory agencies." When *Eley* and *Houston* were decided the court found that the information now requested by defendant must be disclosed "since such persons might contribute evidence favorable to

---

6. In accordance with the above explanation and clarification, paragraph (1) of the procedure to be followed by this court, as set forth in the appendix to United States v. Eley, *supra* at 359, is amended to read as follows:

"(1) The United States Attorney, upon request of an accused, shall permit the ac-

cused to inspect and copy any information in the possession of the prosecution which is arguably favorable to the accused's case."

In all other respects, as interpreted and explained hereinabove, the procedure to be followed remains the same.

the accused." *Eley, supra* 359 at n. 4. In *Houston,* however, the court noted the prosecution's legitimate concern "that furnishing of its witness list to an accused might lead to intimidation of the witnesses and might provide an accused with the opportunity to learn the witnesses' testimony in advance of trial and fabricate appropriate alibis." *Houston, supra,* 339 F.Supp. at 765–766. Consequently, the court adopted the position in *Houston,* to which it has since made reference in several cases, that the government would be required to disclose in advance of trial the identity of only those persons whom it did not intend to call at trial. The government in this case, as part of its response to defendant's motion, states that it knows of no persons with knowledge of the facts of the case, whom it will not call at trial. To this response, and to the general rule seemingly adopted in *Houston,* defendant has raised objections which the court finds to be well taken. Certainly, says the defendant, the fear of intimidation of witnesses and fabrication of alibis cannot be equally great in every case and in some cases the fear of intimidation must be outweighed by the defendant's need for the information requested. To deny information favorable to the accused, out of a fear that the defendant may possibly be able to construct an alibi hardly seems to comport with the constitutionally based command of *Brady.* "To postpone that information until trial means that a defendant's defense must turn on the fortuitous circumstance that the information revealed does not require independent investigation, since defendant will have no opportunity for such investigation of exculpatory information if it is revealed to him only at the time of trial." And, by making disclosure of identity depend upon the government's characterization of whether a person will or will not be a witness, the alleged rule announced in *Houston* allows the government "to control without limit on their discretion the availability of information which they are under a constitutional obligation to disclose."

Whatever the merits of these objections to the position taken in *Houston* as applied to cases in which the identity of a particular witness is sought, defendant's motion for discovery must be denied. It must be denied because the assumption made in *Eley,* repeated in *Houston,* and advanced by the present defendant that the government is constitutionally obligated to reveal the identity of persons with knowledge of the facts of a given case, does not survive the Fifth Circuit's decision in United States v. Gonzalez, 466 F.2d 1286 (5th Cir. 1972). In *Gonzalez* the court upheld the defendant's conviction, against his argument that he suffered reversible prejudice when the government failed to disclose the identity or whereabouts of one Miro who might have given testimony which would tend to exculpate him. Said the Court, defendant "relies heavily on Brady v. Maryland . . . which held that suppression by the prosecution, whether or not in good faith, of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or to punishment. *Brady* does not impose on the prosecution a general duty to help the defense find witnesses who might be favorable to the defendant. . . . There are no indications either in the record in this case or in the appellant's brief that Miro either disclosed any favorable information to the government or would have testified in appellant's favor. Indeed, the appellant's motion for discovery and inspection made no specific request for Miro's name or whereabouts; instead, it asked in general terms for the 'names and addresses of all persons having knowledge pertaining to the facts of this case.' In effect the appellant was asking the government to simplify his task of evidence-gathering. No prejudice to the appellant resulted from the government's refusal to join this fishing expedition. . . . (Citations omitted.)" 466 F.2d at 1288.

The decision of the court in *Gonzalez* controls the identical request here presented by defendant. While *Gonzalez* does not relieve the prosecution

of its duty to disclose the identity of witnesses whose testimony will be favorable to defendant, it does make clear that the government is under no constitutional duty to assist the defendant in locating witnesses who have knowledge of the case, and therefore may be helpful, in some general way, to defendant's preparation. This is not to say that in an appropriate case, where defendant shows particular need for the identity and whereabouts of a specific person or persons, or where egregious circumstances warrant, the court will not compel disclosure of witnesses to ensure the defendant's right to due process. In the present case, however, the request is general and no particular need has been shown. The government has stated that it presently possesses no material, arguably favorable to the defense, and under *Houston* as limited by *Gonzalez* this denial is sufficient to end the inquiry. *Houston,* 339 F.Supp. at 764. The government, as it recognizes, makes this denial at the peril of having its case dismissed should its assessment of the nature of its evidence prove erroneous.

C. Criminal records of prospective government witnesses.

 Defendant has moved for a "summary reflecting the criminal records of all persons the government intends to call at trial." This material is discoverable under *Brady. See Dutton, supra,* 400 F.2d at 800. Consistent with the court's refusal to compel disclosure of the government's witnesses prior to trial, however, disclosure of any impeaching material in the possession of the government will also be deferred until trial. The motion is therefore denied.

D. Names and addresses of grand jurors.

 Defendant asserts that the names and addresses of the grand jurors who returned the present indictment are essential to a "number of determinations, including whether the required number of grand jurors voted in favor of the indictment, the composition of the particular grand jury, whether those voted [*sic*] on the indictment did so after hearing all the evidence presented, and whether the grand jurors may have been given erroneous legal advice before voting on the indictment." The court finds, in keeping with its denial of defendant's motion to quash the indictment, that defendant can show no genuine need for inquiring into the "composition" of the grand jury. The motion for disclosure of the names and addresses of the grand jurors is therefore denied. The court finds, however, that the other reasons in support of disclosure constitute a "particular purpose" for inspection of the transcript of the grand jury proceedings and the required record of the number of jurors concurring in the finding of the indictment. Rule 6(c), Fed.R.Crim.P. The court would be inclined to treat favorably an appropriate motion requesting inspection of these documents. *See* United States v. Bullock, 448 F.2d 728 (5th Cir. 1971).

E. All reports, memoranda, and other information prepared by the government.

 Defendant's request to inspect and copy "All reports, memorandum and other information prepared by the government in the preparation of this case" is explicitly not within the material authorized for discovery under Rule 16(b). Defendant asserts, however, that he seeks favorable information under *Brady* which such internal memoranda might reveal, particularly anything which would indicate that defendant had been entrapped. The government's response does not indicate whether the material in its possession contains such favorable information. Accordingly, the government will forthwith state to defendant whether it possesses any information "arguably favorable" to defendant's defense of entrapment. If it does possess such information and refuses its disclosure, it shall state the reasons

therefor, and the defendant may then file an appropriate motion.

F. Books, papers, documents or tangible objects.

 Defendant moves, finally, to inspect and copy "all books, papers, documents or tangible objects the Government plans to offer in evidence in this case." The test of materiality, required in Rule 16(b), is satisfied by defendant's limiting the materials requested to those which the government plans to introduce in evidence, United States v. Hrubik, 280 F.Supp. 481 (D.C.Alaska 1968), and there is presently nothing to indicate that defendant's request is not reasonable. To the extent that defendant has moved to inspect and copy documents and tangible objects which the government plans to introduce into evidence, therefore, his motion is granted.

In summary:

(1) Defendant's motion to quash and dismiss the indictment based on his challenge to the grand and petit jury selection process is denied;

(2) Defendant's motion to dismiss the indictment for insufficiency is denied;

(3) Defendant's motion for a bill of particulars is granted insofar as it seeks the time, place and manner in which any payment was made to the defendant. In all other respects the motion is denied;

(4) Defendant's motion for disclosure of any electronic surveillance and for hearing is denied as moot; and

(5) Defendant's motion for discovery and disclosure of favorable information is granted in part and denied in part as follows:

(a) Defendant's motion for discovery and inspection of all books, papers, documents or tangible objects which the government plans to introduce in evidence is granted;

(b) The government shall respond whether its files contain any information "arguably favorable" to the accused's defense, and particularly the defense of entrapment;

(c) In all other respects defendant's motion is denied.

## APPENDIX

In accordance with the decision of this court in United States v. Quinn, Criminal No. 28206 (N.D.Ga. Sept. 20, 1973), the procedure to be followed by the Atlanta Division of this court, set forth in the Appendix to United States v. Eley, 335 F.Supp. 353, at 359–360, is hereby amended to read as follows:

(1) The United States Attorney, upon request of an accused, shall permit the accused to inspect and copy any information in the possession of the prosecution which is arguably favorable to the accused's case.

(2) If the United States Attorney entertains a genuine doubt as to whether he must disclose certain information or questions the necessity of granting an accused pretrial discovery of certain information which must be disclosed, he may withhold such information from the accused. If he chooses to withhold such information, he shall notify the accused of the reason for this action and generally describe the information in question.

(3) If the accused, upon receipt of such notice from the United States Attorney, nevertheless desires discovery of such information, he shall so move in this court within ten days after arraignment or waiver thereof. The court may extend the time within which such motion shall be made in exceptional circumstances. Should the accused so move, the court will order the prosecution to submit the information in question for in camera inspection and proceed to dispose of the controversy on its merits.

Done this 20th day of September, 1973.

(s) Newell Edenfield
NEWELL EDENFIELD

(s) Charles A. Moye, Jr.
CHARLES A. MOYE, JR.

(s) Richard C. Freeman
RICHARD C. FREEMAN
United States District Judges