UNITED STATES of America

v.

**John BARNA, Andrew Ewonishon, James J. Moore, Frank E. Rupp, Jr., Joseph F. Cerra, and Frank T. Mancuso, Defendants.**

Crim. Nos. 76–126(1) to 76–126(6).

United States District Court,
M. D. Pennsylvania.

Jan. 10, 1978.

Sal Cognetti, Jr., Asst. U. S. Atty., Scranton, Pa., for plaintiff.

Michael J. Eagen, Jr., Scranton, Pa., Francis J. Wormuth, Bernard J. Brown, Carbondale, Pa., for defendants.

## MEMORANDUM

HERMAN, District Judge.

The six named Defendants were charged in the first count of a six-count indictment with conspiracy to extort in violation of the Hobbs Act, 18 U.S.C. § 1951. Defendant Moore was charged, in Counts II and III, and Defendant Barna was charged, in Counts IV, V and VI, with substantive violations of the Hobbs Act. Counts II, III and VI were dismissed by the Court. At trial the jury found all Defendants guilty of Count I and Defendant Barna guilty of Counts IV and V. All Defendants have moved for a new trial or, in the alternative, for arrest of judgment.

## INTERSTATE COMMERCE

The substance of the offense charged is that Defendants wrongfully used their position as members of the Carbondale Area School Board to secure payment to themselves of "kickbacks" from the firm of Riggi & Riggi, in return for the award of a contract for architectural services in. connection with the construction of a new school building. The most substantial of the grounds advanced in support of Defendants' motion is that the effect of this transaction on interstate commerce [1] has been neither proven nor adequately pleaded.

(a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement

1. To the extent relevant to this action the Hobbs Act provides:

■ It is well-settled law that, to convict under the Hobbs Act, the government need not prove that any specific commodity moving in commerce was obstructed or that commerce was obstructed in any specific manner. It is sufficient to show that the Defendants' acts, taken as a whole, could reasonably be regarded as affecting commerce in any degree, however slight. *United States v. Mazzei*, 521 F.2d 639 (3d Cir. 1975); *United States v. Staszcuk*, 517 F.2d 53 (7th Cir. 1975); *United States v. Amato*, 495 F.2d 545 (5th Cir. 1972). The transcript of proceedings (hereafter TR) in this case contains the following testimony linking this architectural contract to interstate commerce:

(1) Riggi & Riggi contracts with firms in California and Ohio for architectural renderings. TR 105–106. (There was no testimony as to whether any renderings were made in connection with this project.)

(2) Bids on the project were solicited from contractors located outside of Pennsylvania. TR 110.

(3) Materials acquired from out of state were incorporated in the new school building, the construction of which was supervised by Riggi & Riggi. TR 132.

(4) Payments to Riggi & Riggi for work done on the project were often held up by Defendants pending negotiation of the amount to be "kicked back" from each payment. TR 124.

■ The above evidence of interstate activity is scant, but it is sufficient to permit the jury to infer that Defendants' demand for "kickbacks" delayed the construction project, and its concomitant interstate flow

of goods, in some degree, however insubstantial. This is sufficient to support a conviction.

Defendants also contend that the effect of their acts on interstate commerce is not adequately pleaded in the indictment. Count I of the indictment essentially incorporates the language of the Hobbs Act, charging that Defendants:

". . . did conspire to knowingly, wilfully and unlawfully obstruct, delay and affect commerce [and] the movement of articles and commodities in commerce as that term is defined in Section 1951(b)(3), Title 18 U.S.C. by extortion as defined in Section 1951(b)(2), Title 18 U.S.C. in that the defendants aforesaid and the unindicted co-conspirators aforesaid, in their positions as members of the Carbondale Area School Board, Carbondale, Pennsylvania, did conspire to obtain property that was not due to them by wrongful use of fear and under color of official right.

The substence of the conspiracy is as follows:

. . . ."

The indictment then goes on to enumerate five overt acts, none of which contain any specific allegation of interference with commerce.

Counts IV and V, the only substantive counts that went to the jury, similarly charge that Defendant Barna "did knowingly wilfully and unlawfully obstruct, delay and affect commerce . . ." by obtaining money from Riggi & Riggi.

of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.

(b) As used in this section—

. . .

(2) The term "extortion" means the obtaining of property from another, with his consent,

induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.

(3) The term "commerce" means commerce within the District of Columbia, or any Territory or Possession of the United States; all commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof; all commerce between points within the same State through any place outside such State; and all other commerce over which the United States has jurisdiction.

■ Clearly, if no specific instance of obstruction of commerce need be proven to obtain a conviction, then none need be pleaded to support a valid indictment. *United States v. Stirone*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), relied on heavily by Defendants, does not require that the commerce element of a Hobbs Act violation be specifically pleaded. *Stirone* establishes only that, where a specific theory of effect on commerce is alleged in the indictment the government may not then proceed to prove a different theory at trial:

> "It follows that when only one particular kind of commerce is charged to have been burdened a conviction must rest on that charge and not another, even though it be assumed that under an indictment drawn in general terms a conviction might rest upon a showing that commerce of one kind or another had been burdened." 361 U.S. at 218, 80 S.Ct. at 274, 4 L.Ed.2d at 257–258.

Numerous other cases have held that an indictment containing only a general allegation of effect on commerce is sufficient. *Anderson v. United States*, 262 F.2d 764 (8th Cir. 1959); *United States v. Frumento*, 405 F.Supp. 23 (E.D.Pa.1975); *United States v. Quinn*, 364 F.Supp. 432 (N.D.Ga. 1973); *United States v. Malinsky*, 19 F.R.D. 426 (S.D.N.Y.1956).

■ Although this indictment is so general as to be at the extreme lower limit of sufficiency, we nonetheless conclude that it is adequate. The extortionate scheme, which is the core of criminality addressed by the Hobbs Act, is set forth in detail. This is sufficient to apprise Defendants of the charge against them and protect them against double jeopardy. See *United States v. Addonizio*, 451 F.2d 49 (3d Cir. 1972).

The required minimal effect on commerce, which is jurisdictional only, and not part of the criminal act with which Defendants are charged,[2] can be inferred from the allegation of an extortionate scheme involving a major construction project.

■ Since we conclude that the indictment is valid on its face we will not discuss Defendants' speculations as to what evidence may or may not have been presented to the grand jury. See *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974); *United States ex rel. Almeida v. Rundle*, 383 F.2d 421 (3d Cir. 1967).

## DEFENDANTS' STATUS AS PUBLIC OFFICIALS

■ Defendants contend that the Government has failed to prove extortion under the color of official right,[3] in that there has been no proof that Defendants were in fact members of the Carbondale Area School Board during the period covered by the indictment.[4] Assuming *arguendo* that the government has failed to prove actual membership, there is ample evidence of action *under color of* official right to support the convictions. The testimony of Mr. Riggi, TR 108–310, establishes that payments were made for the purpose of securing a contract which, at least in Riggi's understanding, Defendants had the power to award. This exploitation of Riggi's beliefs as to Defendants' official powers is sufficient to make out a violation of the Act regardless of whether they in fact had such powers. *United States v. Mazzei*, 521 F.2d 639 (3d Cir. 1975).

## EXTORTION

■ Defendants argue that there has been no proof that any of the payments

---

**2.** It is not necessary to charge or prove that Defendants knew or intended that their acts would affect commerce in any way. *United States v. Starks*, 515 F.2d 112 (3d Cir. 1975).

**3.** The Government concedes that there has been no proof of the use of force, violence or fear, and thus extortion must be established, if at all, through proof of wrongful use of public office.

**4.** Although Defendants contend that there has been inadequate proof of their membership on the board, they offered nothing at trial to rebut testimony that they attended Board meetings and participated in the award of the contract to Riggi & Riggi. TR 8–16, 206–211. Nor have Defendants disputed the authenticity of checks, drawn on the School Board's account, on which the signatures of Barna, Rupp, Cerra and Mancuso appear, Government Exhibits 2a–2s.

made to Defendants were in fact extortionate. This argument is wholly without merit. As discussed above, the testimony of Mr. Riggi supports a finding that payments were demanded in return for the award of a contract over which Defendants had control by virtue of their positions as school directors. This establishes extortion as defined by the Hobbs Act regardless of whether the payments are characterized as "political contributions" or "kickbacks". *United States v. Trotta*, 525 F.2d 1096 (2d Cir. 1975); *United States v. Starks*, 515 F.2d 112, 124 (3d Cir. 1975).

STATUTE OF LIMITATIONS

Defendants contend that the verdict on Count I must be set aside because the government has failed to prove any overt act in furtherance of the conspiracy within five years of the indictment. This contention is simply unsupportable. Mr. Riggi testified, at TR 125, 128–130, that he made payments to Defendant Barna in March and July of 1972, well within the five-year limitation period.[5] We also reject Defendants' suggestion that there was inadequate evidence to establish an agreement to extort and to link the payments to Barna in 1972 with such an agreement. See TR 12–35.

VARIANCE

Counts IV and V of the indictment charge that payments were made to Barna "on or about" April 15 and July 15, 1972, respectively. At trial Mr. Riggi could not recall the exact dates upon which the payments were made, but testified that he received checks in payment for work performed on the contract on March 2, 1972 and July 10, 1972, and "kicked back" money to Barna shortly after receipt of each check. TR 125–128. Defendants contend that this is a fatal variance between the charge in the indictment and the proof adduced at trial. We disagree. This is not a substantial variance and Defendants can point to no prejudice arising from the governments' failure to prove that payments were made on precisely the dates stated in the indict-

ment. Thus the proof is adequate to support conviction. See *United States v. Somers*, 496 F.2d 723, 745 (3d Cir. 1974).

For the above reasons Defendants' motions will be denied.

---

5. The indictment was returned on September 17, 1976.